UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JASON OSMOND HINES,               )
                                  )
        Petitioner,               )
v.                                )       No.    1:15-CV-13-HSM-CHS
                                  )
JAMES M. HOLLOWAY,                )
                                  )
        Respondent.               )

## MEMORANDUM OPINION

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed by *pro se*

prisoner Jason Osmond Hines ("Petitioner"), challenging the constitutionality of his confinement

under a state court judgment of two counts of second-degree murder and one count of aggravated

assault [Doc. 1]. Respondent filed a response in opposition, as well as a copy of the state record

[Docs. 14 and 15]. Petitioner filed a reply to Respondent's response followed by an amended reply

updating changes in case law used in his earlier filing [Docs. 17 and 27]. For the reasons set forth

below, Petitioner's § 2254 petition [Doc. 1] will be **DENIED**, all pending nondispositive motions

will be **DENIED AS MOOT**, and this action will be **DISMISSED**.

## I.      PROCEDURAL HISTORY

On December 14, 2014, Petitioner was convicted following a jury trial of two counts of

second-degree murder and one count of aggravated assault. *State v. Hines*, No. E2010-01021-

CCA-R3CD, 2011 WL 5966910, at *1 (Tenn. Crim. App. Nov. 30, 2011), *app. denied* (Tenn.

April 11, 2012). At a separate sentencing hearing, the trial court merged one conviction of second

degree murder and the aggravated assault conviction into the remaining second degree murder

conviction and sentenced Petitioner to twenty-two years imprisonment. *Id*. Petitioner appealed

this conviction, raising the following arguments: (1) the evidence was insufficient to support his conviction for second degree murder; (2) the trial court erred in excluding a drawing from evidence; (3) the trial court erred in denying Petitioner's request for a mistrial; (4) the State committed prosecutorial misconduct by suborning perjury of one of its witnesses; (5) the State committed prosecutorial misconduct by making inappropriate comments during closing argument; (6) the cumulative effects of errors at trial precluded a fair trial; and (7) the trial court erred in sentencing Petitioner. *Id.* Discerning no reversible error, on November 30, 2011, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the trial court's judgment. *Id.* at *12. Petitioner sought permission to appeal to the Tennessee Supreme Court ("TSC"), but his request was denied on April 11, 2012. *Id.* at *1.

On August 12, 2012, Petitioner filed a timely *pro se* petition for post-conviction relief. *Hines v. State*, No. E2013-01870-CCA-R3PC, 2014 WL 1576972, at *1 (Tenn. Crim. App. Apr. 21, 2014), *app. denied* (Tenn. Sept. 18, 2014). He was subsequently appointed counsel, and an amended petition was filed on November 9, 2012, alleging ineffective assistance of counsel based on counsel's failure to properly impeach the State's witness and adequately present a theory of self-defense. *Id.* Following an evidentiary hearing on the matter, the post-conviction court denied the petition. *Id.* On April 21, 2014, the TCCA affirmed the post-conviction court's denial of relief and on September 18, 2014, the TSC denied review. *Id.*

Petitioner then filed the instant petition for writ of habeas corpus on December 14, 2014 [Doc. 1]. This matter is now ripe for the Court's review.

## II. FACTUAL BACKGROUND

The following factual background is taken from the TCCA's opinion on appeal:

On the evening of September 9, 2007, Mr. Lovell Lightner was at his mother's house at 3308 3rd Avenue, Chattanooga. He saw Appellant ride up the street on a

bicycle.  Because Mr. Lightner knew Appellant he began talking to him.  According to Mr. Lightner, Appellant told him that Appellant had come to the area to rob a white person.  Appellant lifted up his shirt and showed Mr. Lightner, "something like a big old automatic, like a .44, 9mm, or .45."

Mr. Lightner saw Keosha Byrd and Terrell Harris, the victim, drive down the street.  Mr. Harris stopped the car and spoke with Appellant.  The victim asked Appellant whether he had the forty dollars that he owed him.  Appellant responded that he had the money.  The victim drove up the street and turned around.  He parked in front of Ms. Byrd's uncle's house.  Appellant parked his bicycle in Mr. Lightner's mother's driveway and got into the back seat of the victim's car.

Mr. Lightner began to walk towards his mother's house.  He heard a gunshot and turned around.  He saw Ms. Byrd jump out of the car and run up to the door of 3303 3rd Avenue.  He could see the victim and Appellant struggling inside the car.  He heard a second shot.  He saw Appellant jump out of the car and run away.

Mr. Lightner ran to his mother's house yelling for her to call 911.  At the same time, Ms. Byrd ran to 3303 3rd Avenue beating the door to get into the house.  He saw the victim get out of the car and stagger around walking like a "zombie."  He saw the victim go to Ms. Watkins's house, at 330 3rd Avenue, and knock on the door.  When he was not let into the house, the victim went back to the sidewalk and sat down and did not get up again.

Marquita Watkins lives at 3303 3rd Avenue.  She stated at trial that she saw Appellant and Mr. Lightner talking.  She was on her porch and heard Appellant tell Mr. Lightner that he was in the area to rob someone.  Shortly thereafter, she saw Ms. Byrd and the victim drive up in their car.  She saw Appellant speaking to the victim while the victim was in the car.  She saw the victim drive up the street, turn around, and come back and park on her side of the street.  Ms. Watkins saw Appellant get into the back seat of the victim's car.  She saw a "flash of light inside the car" and heard a gunshot.  Ms. Watkins saw Ms. Byrd get out of the car and run up to her house.  She let Ms. Byrd into the house, and they called 911.

She looked back out the window and saw Appellant still in the car bending over to the front seat of the car by the victim.  Ms. Watkins saw Appellant jump out of the car, carrying something in his hand, and run away from the scene.  After Appellant ran away, the victim got out of the car and came up to Ms. Watkins's porch.  She did not let him into the house.  The victim walked back to his car and sat down.  However, the victim could not talk because when he tried "a big bubble of blood would come out of his mouth and bust all over his face."

Ms. Byrd stated that the victim had been her boyfriend.  On the date in question, Ms. Byrd and the victim were driving on 3rd Avenue when they saw Appellant.  According to Ms. Byrd, Appellant flagged them down and told the victim he wanted

to buy some crack cocaine. The victim told him that they would be "back around" because they had to drop a friend off at a house up the street.

Ms. Byrd testified that the victim had been selling cocaine that day and that he had over $1,000 in his possession. They returned to Appellant and parked in front of Ms. Watkins's house. Appellant got in the backseat behind the victim. The victim said something that made Ms. Byrd turn around and look at him. When she did that, she saw Appellant pulling a gun from his waistband. Appellant was pointing the gun toward the victim's face or neck. When Ms. Byrd saw the victim trying to get out of the car, she got out and ran to Ms. Watkins's house.

Ms. Byrd saw the victim get out of the car. She said he came to her friend's house. When he returned to the car, he fell on the ground. Ms. Watkins and her boyfriend went to check on the victim by the car. Ms. Byrd said she did not see anyone take anything from the car. She also denied that the victim had a gun the night of the incident. Ms. Byrd gave a statement to officers when they arrived, and she identified Appellant in a photographic lineup immediately when she was shown the photographs.

Officer Peter Miller was a patrol officer with the Chattanooga Police Department. He responded to a shooting call at the 3300 block of 3rd Avenue. When he arrived, he found the victim lying on the ground. The victim had a single gunshot wound. He was still alive but unable to speak.

Lieutenant Edwin McPherson worked for the Chattanooga Police Department. He headed up the search for Appellant. On September 11, 2007, Lieutenant McPherson received information as to where Appellant was hiding. The officers went to the location, found Appellant, and arrested him.

Investigator Greg Mardis, with the Chattanooga Police Department, collected evidence at the scene of the crime. He found $300 worth of cocaine between the console and seat of the car. He could not find the weapon and found no shell casings in the car. He testified that this could have been because a revolver was used rather than an automatic weapon.

Scientists with the Tennessee Bureau of Investigation ("TBI") also testified at the trial. Don Carmen testified that the bullet he received for testing was a bullet from a .44 special Smith and Wesson. It was a revolver bullet. Laura Hodge testified that the gunshot residue kit collected from the victim indicated no gunshot residue. She stated that this result did not eliminate the possibility that the victim had gun.

An autopsy was performed on the victim. James K. Metcalfe was the forensic pathologist with the Hamilton County medical examiner's office who performed the autopsy. He determined that a gunshot wound to the neck was the cause of death. Dr. Metcalfe testified that the bullet entered the victim's neck near his right

ear, exited on the left side of his neck, and came to rest in his shoulder. There were also markings that suggested close-range contact.

Appellant also testified at the trial. He stated that he arrived on 3rd Avenue and found Mr. Lightner. He spoke with Mr. Lightner about buying some crack cocaine. He saw the victim, whom he knew from serving time in jail together. The victim said that he would sell him some cocaine but needed to take a friend home who was in the backseat of the car. When the victim returned, Appellant tried to give the victim $40, but the victim told Appellant he needed to get into the car.

Appellant got into the backseat of the car. He placed his $40 on the console. According to Appellant, the victim grabbed the money and started arguing with him about Appellant's owing him money from a prior drug deal. Appellant told the victim he needed to give him his money back or give him some cocaine. According to Appellant, the victim pointed a gun at him and demanded the rest of the money Appellant owed him. Appellant testified that they began to argue and struggle with each other to gain control of the gun. Appellant thinks that during the struggle his finger hit the trigger and caused the victim to accidentally shoot himself. He stated that he got scared when the victim was shot and ran away. Lieutenant McPherson arrested Appellant at his friend's house.

The Hamilton County Grand Jury indicted Appellant for one count of first-degree murder, one count of first degree felony murder, and one count of attempted especially aggravated robbery. At the conclusion of a jury trial held May 5–7, 2009, the jury convicted Appellant of two counts of second-degree murder as lesser included offenses of the first degree murder charges and of aggravated assault as a lesser included offense of attempted especially aggravated robbery.

On June 8, 2009, the trial court held a separate sentencing hearing. The trial court sentenced Appellant to twenty-two years as a Range I, violent offender for each of the second degree murder convictions and five years for the aggravated assault conviction. The trial court then merged one of the second-degree murder counts and the aggravated assault into the remaining second-degree murder conviction. The result was one twenty-two year sentence.

*Hines*, 2011 WL 5966910, at *1-3.

## III.    STANDARD OF REVIEW

The Court must review Petitioner's request for habeas corpus relief pursuant to the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows state prisoners to seek federal habeas corpus relief on the ground that they are being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §

2254; *Reed v. Farley*, 512 U.S. 339, 347 (1994).  Congress has mandated that federal courts review state court adjudications on the merits of such claims using a "highly deferential" standard of review.  *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  Under this deferential standard, this Court is bound to accept the state court's findings of fact as true unless a petitioner presents "clear and convincing evidence" to the contrary.  28 U.S.C. § 2254(e)(1)(providing that "a determination of a factual issue by a State court shall be presumed to be correct" unless the petitioner rebuts that presumption with clear and convincing evidence); *see Seymour v. Walker*, 224 F.3d 542, 551-52 (6th Cir. 2000).  Additionally, this Court may not grant habeas relief to a state prisoner unless the state court's decision on the merits of his claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Clearly established federal law," for the purposes of § 2254(d)(1), refers to rulings of the United States Supreme Court in place at the time of "the last state-court adjudication on the merits."  *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (defining clearly established federal law as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision").  A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state-court decision unreasonably applies clearly established federal law if

"the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

The standards set forth in the AEDPA's are "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). Ultimately, the AEDPA's highly deferential standard requires this Court to give the rulings of the state courts "the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

However, before a federal court may review a federal claim raised in a habeas petition, it must first determine whether the petitioner has exhausted the remedies available to him in state court. *See* 28 U.S.C. § 2254(b)(1). If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis of a federal habeas petition. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

The exhaustion "requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Wilson v. Mitchell*, 498 F.3d 491, 498–99 (6th Cir. 2007) (quoting *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001)). Under Tennessee Supreme Court Rule 39, a Tennessee prisoner exhausts a claim by raising it before the TCCA. *See Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003). A federal court will not review claims that were not entertained by the state court due to the petitioner's failure to (1) raise those claims in the state courts while state remedies were available, or (2) comply with a state procedural rule that prevented the state courts from reaching the merits of the claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

A petitioner who fails to raise his federal claim in the state courts and who is now barred by a state procedural rule from returning with the claim to those courts has committed a procedural

default. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A procedural default forecloses federal habeas review, unless the petitioner can show cause to excuse the failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *Id*. at 750.

## IV.    ANALYSIS

Respondent has identified the following claims[1]:

1.  Ineffective assistance from trial counsel [Doc. 1-1 at 1-4, 9-11, 14-16].

2.  Ineffective assistance from direct appeal counsel [Doc. 1-1 at 1, 11].

3.  Ineffective assistance from post-conviction appellate counsel [Doc. 1-1 at 1, 17].

4.  Due process violation caused by trial court's discussions with trial counsel and exclusion of demonstrative evidence [Doc. 1-1 at 16].

5.  Error by post-conviction court for failing to recuse itself [Doc. 1-1 at 15-16].

6.  Sentencing error: Double Jeopardy [Doc. 1-1 at 17].

7.  Prosecutorial misconduct [Doc. 1-1 a 7, 9].

Respondent argues that all claims asserted by Petitioner are either non-cognizable, deficiently pleaded, procedurally defaulted, and/or meritless and should be dismissed.

### A.    INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that he received ineffective counsel from trial counsel (Claim 1), direct appeal counsel (Claim 2), and post-conviction counsel (Claim 3). The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. Under the Sixth Amendment,

---

[1] Petitioner did not follow the court-approved form for his *pro se* petition and failed to enumerate his claims in an organized manner. After review of the pleading, the Court does not discern any further claims not already identified by Respondent.

a defendant has a constitutional right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a defendant must meet a two-pronged test: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id.*

Under the first prong of the test, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The reasonableness of counsel's performance must be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689). A court considering counsel's performance "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

The second prong requires the petitioner to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. In order to prevail on a claim of prejudice, a petitioner must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. It is not enough "to show that the

errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. While both prongs must be established to meet a petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

Any § 2254(d)(1) claim reviewed under *Strickland* is "doubly deferential," affording both the state court and the defense attorney the benefit of the doubt. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Further, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable," but instead "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

## 1. CLAIM 1: TRIAL COUNSEL

Petitioner asserts the following allegations of ineffective assistance of trial counsel: (1) trial counsel failed to properly impeach witnesses; (2) trial counsel failed to object to the State's closing argument; (3) trial counsel abandoned Petitioner's "self-defense" argument; (4) trial counsel had a conflict of interest during trial due to trial counsel's attempt to secure a position with the district attorney's office, by taking instruction from the State, and because Petitioner filed a complaint with the Board of Professional Responsibility during trial [*See* Doc. 1-1].

Respondent argues that the state court's rejection of Petitioner's ineffective assistance claims as to his trial counsel was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of facts in light of the evidence presented in state court, and thus he is not entitled to habeas relief [Doc. 15 p. 13].

### a. Failure to Properly Impeach Witnesses

Petitioner assert that trial counsel failed to properly impeach two state witnesses with their prior, inconsistent statements [Doc. 1-1 p. 2]. Respondent argues in opposition that any error by

trial counsel was harmless and does not met the standards to establish ineffective assistance [Doc. 15].

Although the state courts found that trial counsel's failure to impeach Mr. Lightner and Ms. Watkins constitutes deficiency in counsel's performance, when applying the *Strickland* test, the state courts found no reasonable probability that the deficiency in counsel's performance was prejudicial. *Hines*, 2014 WL 1576972, at *5-6. Specifically, the TCCA reiterates the post-conviction court's finding that there was no prejudice in trial counsel's performance based on the following reasons:

> . . . the post-conviction court concluded that despite counsel's inability to effectively impeach Mr. Lightner and Ms. Watkins, the Petitioner's defense was not prejudiced by this deficiency. Significantly, the court noted that the Petitioner was not convicted of especially aggravated robbery or felony murder, evidencing the jury's rejection of Mr. Lightner's and Ms. Watkins's testimony regarding the Petitioner's intent to rob someone. Additionally, the court emphasized that other evidence, such as the testimony of Ms. Byrd and the medical examiner, contradicted the Petitioner's version of events and theory of self-defense. Ms. Byrd, the only other witness in the car at the time of the altercation, testified that the Petitioner was the initial aggressor and pulled the gun from his waistband, which contradicted the Petitioner's testimony that the victim pulled the gun on him. Likewise, the medical examiner opined that the victim was facing forward at the time of the shooting, which contradicted the Petitioner's assertion that the gun accidently discharged during a struggle between the victim and the Petitioner.

*Hines*, 2014 WL 1576972, at *9.

Petitioner avers that the post-conviction court was incorrect in its analysis. Petitioner appealed the post-conviction court's decision arguing that "making references to other evidence adduced at trial while making the prejudice inquiry under the *Strickland* prejudice prong, is 'contrary to' Supreme Court's clearly established precedents" [Doc. 1-1 p. 2].

However, the TCCA reasoned that, although the post-conviction court references the other evidence adduced at trial, the court's analysis is not an inquiry into the sufficiency of the evidence. *Hines*, 2014 WL 1576972. Rather, it is an inquiry into the probability that the jury's decision

"would reasonably likely have been different absent the errors." *Id*. (See *Pylant v. State,* 263 S.W.3d 854, 874 (Tenn. 2008)).  After considering all of the evidence, the post-conviction court concluded, and the TCCA confirmed, that Petitioner failed to establish that it was "reasonably probable that, but for counsel's mistakes, the [P]etitioner would not have been convicted of second-degree murder or aggravated assault." *Id*.

This Court determines that the TCCA applied the relevant case law to find that there is no reasonable probability that the deficiency in counsel's performance was prejudicial.  Petitioner made no showing that the decision reached would reasonably likely have been different absent the error.  As such, Petitioner failed to establish that he suffered from any prejudice and thus failed to reach the standard articulated in *Strickland*.  Accordingly, Petitioner is not entitled to relief on this claim.

Additionally, Respondent identified another claim presented by Petitioner alleging that Ms. Byrd was also not properly impeached by trial counsel.  However, Respondent argues that this argument was raised for the first time in the instant habeas petition and therefore procedurally defaulted and should be dismissed.

After a review of the record, this Court finds that Petitioner's claim that Ms. Bryd was not properly impeached by trial counsel was not properly raised in state court, and thus the claim is unexhausted and not reviewable by the Court under § 2254.  Further, Petitioner is now precluded from raising this claim in a state post-conviction proceeding as the time for seeking such relief long since has passed.  T.C.A. § 40-30-102(a) and (b); *Seals v. State*, 23 S.W.3d 272, 276 (Tenn. 2000).  Petitioner did not argue any cause that would excuse his procedural default of this claim against Ms. Byrd, and thus this claim of ineffective assistance of counsel, along with the ineffective assistance claims regarding the testimony of Mr. Lightner and Ms. Watkins, will be dismissed.

### b.      Failure to Object to State's Closing Argument

Petitioner next contends that trial counsel rendered ineffective assistance by failing to object to the State's closing argument.  Respondent argues that because this claim was never specifically asserted during Petitioner's post-conviction appeal, it is procedurally defaulted [Doc. 15 p. 16].

This Court finds that, although Petitioner never presented this specific claim to the post-conviction court, it was briefly addressed by the TCCA as follows:

> During closing argument, the prosecutor told the jury, "You heard [counsel] say in his opening statement, this is an issue of self-defense. You heard the testimony of [the Petitioner] that this is [a] self-defense issue . . . You are not going to receive an instruction about self-defense [from the judge]. It is not something the law allows you to consider in this case.  It has not been fairly raised by the proof."  In his brief to this court, the Petitioner notes that counsel failed to object to these "inaccurate and damaging statements" but makes no argument regarding whether counsel's failure to object amounted to ineffective assistance of counsel. Notwithstanding, we note that on direct appeal, this court concluded that "when [trial counsel] failed to object to the comments made during closing argument about the lack of a self-defense instruction, that [trial counsel] was making a tactical decision to rely on a theory that the shooting was an accident." *See Hines,* 2011 WL 5966910, at *9. Accordingly, we discern no ineffective assistance of counsel in this regard.
>
> *Hines*, 2014 WL 1576972, at *10.

As stated in Respondent's response, "'[p]rosecutors are . . . permitted to comment on and emphasize portions of the evidence in closing arguments.' *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)." [Doc. 15 p. 16].  Even if the State's comments during closing were improper, which this Court makes no such determination, Petitioner has failed to show that any of the State's comments rendered the trial fundamentally unfair.  Rather than an error, the TCCA determined that trial counsel made a tactical decision when not objecting to the State's closing argument.  In applying the doubly deferential standard to both trial counsel's strategical decisions and the state

court's decision, this Court cannot find that trial counsel's decision not to object constitutes deficient performance. As such, this claim of ineffective assistance of counsel will be dismissed.

### c. Failure to Present Defense of "Self-Defense"

Petitioner asserts that trial counsel rendered ineffective assistance of counsel by failing to present a theory of self-defense [Doc. 1-1 p. 8]. Petitioner argues that he and trial counsel had planned to pursue a self-defense theory of the crime, but trial counsel "abandoned the self-defense instruction because of the language conditioning the availability of the defense" [*Id*. at 9]. The TCCA found as follows:

> The Petitioner and counsel "obviously" talked about self-defense as a possible defense theory; however, counsel wanted to "wait to see how the evidence turn [ed] out" before determining which defense to argue to the jury. Counsel explained that he decided not to request a self-defense jury instruction after discussing it with the State and trial court and learning that self-defense is inapplicable where the defendant is engaged in illegal activity.

*Hines*, 2014 WL 1576972, at *3.

In this case, by his own account, Petitioner entered the victim's vehicle to engage in illegal activity, the acquisition of drugs. *Hines*, 2014 WL 1576972, at *6. As such, trial counsel did not make a self-defense argument because he did not believe that the Petitioner was entitled to the instruction. *Id*. at 4. The TCCA held that because the availability of the defense of self-defense being conditional on the non-engagement in an illegal activity, no reasonable probability exists that any deficiency in counsel's performance in this respect was prejudicial. *Id*. at 6.

After reviewing the state court adjudications for this claim on the merits, and using a "highly deferential" standard of review, this Court finds that the state court decision neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States at the time the decision was made or resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding. Trial Counsel's decision to abandon the self-defense theory appears to be a decision based on trial strategy. Based on Petitioner's failure to provide clear and convincing evidence contrary to the state court's opinion, this Court finds Petitioner's claim of ineffective assistance of counsel for trial counsel's failure to present a theory of self-defense will be dismissed.

### d.    Trial Counsel's Conflict of Interest Deprived Petitioner of a Fair Trial

Petitioner asserts that trial counsel was ineffective due to conflict of interest [Doc. 1-1 p. 14]. Petitioner alleges that the conflict of interest occurred when trial counsel took instruction regarding trial strategy from the State in an attempt to secure a position with the district attorney's office, and when Petitioner filed a complaint with the Board of Professional Responsibility during trial [*Id*.]. Respondent argues that this claim is both procedurally defaulted and without merit.

After review of the record, this Court agrees with Respondent that Petitioner never presented any claim during his state court proceedings specifically regarding a conflict of interest on behalf of trial counsel, and therefore, this claim is procedurally defaulted. However, some of these issues were briefly discussed by the state courts in their evaluation of other claims. Accordingly, this Court will look to the merit of Petitioner's allegation.

Looking at the substance of his argument in the instant petition, this Court finds that Petitioner offers no proof as to any conflict of interest. Petitioner argues that he filed a request to appoint different counsel based on trial counsel's limited experience in first-degree murder cases, but claims that he felt forced to keep trial counsel after a hearing on the matter in which the presiding judge said he would not allow any additional time to prepare if new counsel was obtained. The Court finds no conflict of interest in this scenario. Moreover, in the instant petition, Petitioner alludes to the fact that conflict existed by way of coercion between the State and trial

counsel because trial counsel knew he would be working with the District Attorney's Office following the trial. Petitioner states that the court and the State influenced trial counsel to not call his defense witness and to abandon his defense of self-defense [Doc. 1-1 p. 16]. Yet, Petitioner offers no evidence to support these allegations, nor does this claim find support in the record. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 Fed. Appx. 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief). As such, this Court finds that this claim of ineffective assistance of counsel is not only procedurally defaulted but also without merit and will be dismissed.

## 2. CLAIM 2: DIRECT APPEAL COUNSEL

Petitioner asserts that his right to due process was violated when his counsel on direct appeal failed to raise the issue of whether trial counsel should have made a "duress" argument as an alternative to a "self-defense" theory [Doc. 15 p. 23, Doc. 1-1 p. 11]. Petitioner complains that "without a defense at trial, [he] was denied [his] constitutional right to trial by jury" [Doc. 1-1 p. 11]. Specifically Petitioner claims that his testimony at trial explaining that he was under duress at the time of the shooting was sufficient to warrant a jury instruction [Doc. 1-1 p. 12]. Petitioner opines that "if the jury would have been instructed on the defense of duress, it is a reasonable probability that the jury would have convicted [him] of a lesser degree of homicide, lesser than second-degree murder" [*Id*. at 13].

After review of the record, this Court finds that Petitioner did not raise this issue in his appeal to TCCA. Ordinarily, "attorney error in state post-conviction proceedings 'cannot constitute cause to excuse [a] default in federal habeas'" because there is no constitutional right to an attorney in those proceedings. *Coleman*, 501 U.S. at 757. However, in *Martinez v. Ryan*, 566

U.S. 1 (2012), the Supreme Court established a narrow exception to the *Coleman* rule, holding that:

> [w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17; *see also Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (extending the *Martinez* exception to states whose procedural requirements make it "virtually impossible" to present an ineffective assistance claim on direct appeal, even if no outright prohibition exists). The Sixth Circuit subsequently held that the *Martinez-Trevino* exception is applicable in Tennessee because Tennessee's procedural framework directs defendants to file ineffective assistance claims in post-conviction proceedings, rather than on direct appeal. *Sutton v. Carpenter*, 745 F.3d 787, 795–96 (6th Cir. 2014).

Although Petitioner does not argue that the *Martinez* exception applies to excuse his procedural default, the Court addresses the issue as follows. Petitioner cannot find relief under *Martinez* because he was not prejudiced by his direct appeals counsel's failure to raise the claim that trial counsel should have made a duress argument. Although Petitioner may believe he was entitled to a duress jury instruction, Petitioner failed to present any evidence that not having a duress jury instruction was prejudicial or caused his trial to be unfair.

As previously stated, trial counsel is given the benefit of the doubt when it comes to decision of trial strategy. Choosing which defense to present to the jury is clearly considered trial strategy. *See, Strickland*, 466 U.S. at 681 ("[W]hen counsel's assumptions are reasonable given the totality of the circumstances and when counsel's strategy represents a reasonable choice based upon those assumptions, counsel need not investigate lines of defense that he has chosen not to

employ at trial."). The record shows that on cross-examination Petitioner acknowledged that he got into the victim's car voluntarily to buy drugs and that he was not under duress at the time of the incident. Thus, trial counsel's decision not to include a defense of duress appears to be sound trial strategy and does not constitute ineffective assistance of counsel. Accordingly, Petitioner's counsel on direct appeal was not ineffective for not making an ineffective assistance of counsel claim against trial counsel for not presenting a duress defense to the jury. As such, this claim will be dismissed.

### 3. CLAIM 3: POST-CONVICTION APPELLATE COUNSEL

Petitioner next asserts that his post-conviction appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel on appeal [Doc. 1]. However, after review of the record, the Court finds that prior to the instant petition, Petitioner did not raise this claim for relief.

Ineffective assistance of counsel at this stage of the case cannot constitute cause to excuse the procedural default because it is not an initial-review collateral proceeding. Although *Martinez* and *Trevino* expanded the class of cases in which a petitioner can establish cause to excuse the procedural default of ineffective-assistance claims, the Supreme Court cautioned that the rule "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." *Martinez,* 566 U.S. 1; *Trevino v. Thaler*, 569 U.S. 413 (2013).

Here, Petitioner has never raised a claim for ineffective assistance of post-conviction appellate counsel in the state courts. Moreover, the Supreme Court has not recognized ineffective assistance of post-conviction counsel as a free-standing constitutional claim and Petitioner does not argue it as such here. Ineffective assistance of post-conviction counsel is relevant only if it is

cause for failure to comply with a procedural rule. Petitioner has not shown that the error of his post-conviction trial counsel caused his non-compliance with a procedural rule in the post-conviction appellate court. Accordingly, his ineffective assistance of counsel claim is procedurally defaulted and will be dismissed.

## B.     CLAIM 4- VIOLATION OF DUE PROCESS: EXCLUSION OF DEMONSTRATIVE EVIDENCE

In his pleading, Petitioner states that the "trial court violated [his] due process rights by excluding [a] demonstrative drawing as evidence" [Doc. 1-1 p. 16]. Respondent argues that Petitioner never presented this allegation to the state court during his post-conviction proceedings, and, as such, this claim is now barred by procedural default [Doc. 15 p. 20]. However, the TCCA discussed the issue as follows:

> At trial, Appellant attempted to introduce a drawing completed by one of Appellant's fellow inmates depicting the incident to demonstrate where Appellant's hands and the victim's hands were in relation to each other. The trial court initially was going to allow the introduction of the drawing but subsequently discovered that Appellant had not drawn the picture himself. At this point, the trial court sustained the State's objection to the introduction of the drawing.

*Hines*, 2011 WL 5966910, at *4. Thus, the Court finds Petitioner fairly presented this issue on appeal. *Id*.

Analyzing the issue on the merits, the post-conviction court concluded that there was no abuse of discretion in denying the admission of the drawing into evidence when he was allowed to testify extensively on this same issue. *Id*.

> As we begin our analysis, we note well-established precedent providing generally "that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." *State v. McLeod,* 937 S.W.2d 867, 871 (Tenn.1996). To be admissible, evidence must satisfy the threshold determination of relevancy mandated by Rule 401 of the Tennessee Rules of Evidence. *See, e.g ., State v. Banks,* 564 S.W.2d 947, 949 (Tenn.1978). Rule 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without

the evidence." Tenn. R. Evid. 401. However, relevant "evidence may be excluded if its probative value is substantially outweighed by ... the danger of unfair prejudice." Tenn. R. Evid. 403; *see also Banks,* 564 S.W.2d at 951. A trial court abuses its discretion in regards to the admissibility of evidence only when it "applie[s] an incorrect legal standard, or reach[es] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn.1999) (quoting *State v. Shuck,* 953 S.W.2d 662, 669 (Tenn.1997)).

*Hines*, 2011 WL 5966910, at *4

In sum, the post-conviction court denied this claim because the trial court did not apply an incorrect legal standard and because its decision was not against logic nor did it cause an injustice to Petitioner. *Id*. This issue was not presented in any further state court proceedings.

This Court finds that the state court's decision was not contrary to and did not involve an unreasonable application of clearly established federal law, and it was not based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings. Even if it were found to be error, the error would be harmless and not affect the outcome of the trial because Petitioner was able to testify on this same issue. Therefore, evidence concerning his theory of where his and the victim's hands were in relation to each other was presented to the jury even through not presented in a drawing. Petitioner did not meet his burden of demonstrating that he is entitled to relief on this claim. This claim will be dismissed.

## C.     CLAIM 5- VIOLATION OF DUE PROCESS- FAILURE TO RECUSE

In his pleading, Petitioner states, "I'm alleging that the post-conviction undersigned judge abused his discretion when he denied my motion to recuse" [Doc. 1-1 p. 16]. Petitioner claims that his post-conviction counsel orally moved for recusal of the judge based on discussions between the judge and trial counsel during a recess, which allegedly influenced trial counsel's defense strategy [*Id*.]. Petitioner asserts that his due process rights were violated when his motion

to recuse was denied [*Id.*]. Respondent argues that Petitioner did not raise this claim on appeal and therefore it is procedurally barred.

After a review of the record, this Court finds that the alleged due process violation was never presented to the state courts and a state court remedy is no longer available. Although the claim is technically exhausted, it is procedurally defaulted and will be dismissed.

### D.     CLAIM 6- DOUBLE JEOPARDY CLAUSE

Petitioner asserts that his sentence constitutes double jeopardy in violation of the Fifth Amendment [Doc. 1-1 p. 17]. Respondent argues in opposition that Petitioner's challenge to the state court's application of state sentencing laws is not a cognizable basis for federal habeas relief and is also procedurally defaulted [Doc. 15 p. 21].

First, the state court explains, the Double Jeopardy clause essentially prevents a sentencing court from prescribing a greater punishment than the legislature provided. *White v. Howes*, 586 F.3d 1025, 1033 (6th Cir. 2009). The Double Jeopardy clause does permit multiple punishments for the same conduct if the legislature has so provided and recognizes no exception for necessarily included or overlapping offenses. *Id.* In assessing the intent of the state legislature as to multiple punishment for the same conduct, a federal habeas court is bound by the state's construction of its own statutes. *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013). Thus, once a state court has determined that the state legislature intended cumulative punishments for a single criminal incident, the federal habeas court is bound by that determination.

In the instant petition, the allegation is simply stated as "[Petitioner's] conviction and sentence is a violation of the Fifth Amendment and is thereby void . . ." [Doc. 1-1 p. 17]. Petitioner appears to be challenging the state court's application of state sentencing laws. However, federal habeas courts may not provide relief to petitioner based on errors of state law. *See Estelle v.*

*McGuire*, 502 U.S. 62, 67-68 (1991). A federal habeas petition that alleges state grounds must be dismissed. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000). Petitioner's allegation of the state court's incorrect application of state sentencing guidelines is a matter of state concern only and not a cognizable basis for federal review. *Howard v. White*, 76 Fed. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only."). Consequently, this claim will be dismissed.

### E.      CLAIM 7- PROSECUTORIAL MISCONDUCT

Lastly, Petitioner claims that the State committed prosecutorial misconduct by presenting a witness whose testimony the State knew was perjured [Doc. 1-1 p. 7]. Petitioner argues that Mr. Lightner's testimony was inconsistent and often directly contradictory to other witnesses' testimony [*Id*.]. Specifically, Petitioner says the State knew Mr. Lightner's testimony was misleading and incorrect but used his testimony to their advantage [*Id*.]. Mr. Lightner testified that he saw Petitioner with an automatic pistol, but the State knew that the victim was killed by a revolver [*Id*.]. Knowing this, the State still "sponsored this testimony" at trial allowing the jury to be presented with false information [*Id*.].

The post-conviction court found that although the State has a duty not to present false testimony, the fact that Mr. Lightner's testimony differed from that of other witnesses and other evidence presented is not in and of itself proof that Mr. Lightner perjured himself. *Hines*, 2011 WL 5966910, at *6. Mr. Lightner testified that he has smoked a great deal of marijuana since the events at issue and that his memory was "foggy." *Id*. In addition, Petitioner was allowed to cross-examine Mr. Lightner at length. *Id*. When witnesses give contradictory testimony, it is up to the trier of fact to determine which testimony is credible. *Id*. The post-conviction court found that

Petitioner had not proven that Mr. Lightner perjured himself or if he did perjure himself that the prosecution knowingly put him on the stand for that purpose. *Id*.

Notwithstanding the deference owed to the state court's decision, this Court finds that Petitioner has failed to demonstrate how the State's testimonial examination of Mr. Lightner rendered the trial unfair. The state court's analysis of this allegation was not unreasonable, and accordingly, this claim of prosecutorial misconduct will be dismissed.

Moreover, Petitioner alleges the State committed prosecutorial misconduct during its closing argument when the assistant district attorney told the jury that they could not consider self-defense [Doc. 1-1 p. 8]. Petitioner asserts that this was an improper statement and was misleading to the jury [*Id*.]. The post-conviction court determined that to review this claim of prosecutorial misconduct it must do so through the process of "plain error" review embodied in Rule 36(b) of the Tennessee Rules of Appellate Procedure. In turn, Rule 36(b) provides, "When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). This is the same type of inquiry as the harmless error analysis, but here the appellant bears the burden of persuasion. *Hines*, 2011 WL 5966910 at *8. Under relevant case law, the post-conviction court found that Petitioner was unable to demonstrate that plain error review was appropriate to the issue because the decision to not include an instruction on self-defense was made by Petitioner's counsel. *Id*.

This Court finds that the state court decision neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States at the time the decision was made or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding. Based on Petitioner's failure to provide clear and convincing evidence contrary to the state court's opinion, this claim of prosecutorial misconduct will be dismissed.

## V.    CONCLUSION

For the reasons set forth above, Petitioner's § 2254 petition [Doc. 1] will be **DENIED**, all pending nondispostive motions will be **DENIED AS MOOT**, and this action will be **DISMISSED**.

## VI.    CERTIFICATE OF APPEALABILITY

The Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El*, 537 U.S. at 327, 336; *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right as to any claims. First, as to the procedurally defaulted claims, jurists of reason would not debate the Court's finding that the claims are procedurally defaulted. Further, in view of the law upon which the dismissal on the merits of

the adjudicated sub-claim is based, reasonable jurists could not disagree with the correctness of the Court's resolution of this claim. Because the Court's assessment of Petitioner's claims could not be debated by reasonable jurists, such claims are inadequate to deserve further consideration, and the Court will **DENY** issuance of a COA. *See* 28 U.S.C. § 2253; Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 327.

**A SEPARATE JUDGMENT ORDER WILL ISSUE.**


**SO ORDERED** this 27th day of March, 2018.


_____*/s/ Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE